ORDER
OWENS, Chief Judge.
By consent order of January 24, 1974, as to defendant boards of education for Grady, Hart, Irwin, Jasper, Macon, Mitchell, Monroe, Morgan and Peach Counties, it was ORDERED, ADJUDGED and DECREED that:
1. The modifications in the desegregation plans for the ..., Mitchell County School District, Irwin County School District ... described above are approved.
2. The detailed regulatory injunction issued by the United States District Court for the Northern District of Georgia on December 17, 1969, as subsequently modified, is dissolved for ... the Grady County School District, ... the Hart County School District, ... the Irwin County School District, the Jasper County School District, ... the Macon County School District, ... the Mitchell County School District, the Monroe County School District, the Morgan County School District, the Peach County School District, ... and the following permanent injunction is substituted for each school district:
(a) the school district shall take no action which tends to segregate students or faculty by or within schools on the basis of race, color, or national origin.
(b) Staff members who work directly with children and professional staff who work on the administrative level will be hired, assigned, promoted, paid, demoted, dismissed, and otherwise treated without regard to race, color, or national origin.
(c) Each school district shall permit a student attending a school in which his *1442 race is in the majority to choose to attend another school where his race is in the minority. Any student transferring under this arrangement must be provided with free transportation and space must be made available in the school to which the student desires to move.
(d) Bus routes and the assignment of students to buses will be designed to insure the transportation of all eligible pupils on a non-segregated and otherwise non-discriminatory basis.
(e) All school construction, school consolidation and site selection (including the location of any temporary classrooms) in the system shall be done in a manner which will prevent the reoccurrence of the dual school structure.
(f) If the school district grants transfers to students living in the district for their attendance at public schools outside the district, or if it permits transfers into the district, it shall do so on a non-discriminatory basis, except that it shall not consent to transfers where the cumulative effect will reduce desegregation in either district.
3. Each of the school districts listed in paragraph 2 above shall be placed on this Court’s inactive docket, subject to being reactivated on proper application by any party, or on the Court’s motion, should it appear that further proceedings are necessary.
4. The State of Georgia, the State Board of Education, its individual members, and .the State Superintendent of Schools have a continuing duty to promote compliance by the school districts in this cause with orders of this Court and shall remain as active parties to this case until all of the school districts in this cause have been placed on the inactive docket.
7. The State of Georgia, the State Board of education, its individual members, the State Superintendent of Schools, the school districts which remain as active parties in this cause as indicated in paragraphs 5 and 6 of this Order shall continue to comply with all of the requirements of December 17, 1969, Order of the United States District Court for the Northern District of Georgia, as subsequently modified, with the following exceptions:
a. School districts remaining as active parties in this cause, in lieu of providing the information required by the December 17,1969 Order, as subsequently modified, in their bi-annual reports may provide the information reported in the School System Summary Reports (Forms 101 and 102) which are filed with the Department of Health, Education and Welfare and the information reported in the Elementary-Secondary Staff Information (Form EEO-5) which is filed with the Equal Employment Opportunity Commission. However, all school districts which remain as active parties in this cause shall continue to file bi-annual reports to the State Board of Education and the Department of Health, Education and Welfare.
b. The provisions of the detailed regulatory injunction of December 17, 1969, issued by the United States District Court for the Northern District of Georgia, as subsequently modified, specifying the duties of the State defendants in this cause, shall automatically be dissolved as they pertain to each school district which this Court has placed on the inactive docket and the following permanent injunction substituted:
The State of Georgia; the State Board of Education its individual members and the State Superintendent of Schools (a) shall not take any action which may result in the reestablishment of the former dual school system in any of said school districts; (b) shall not permit any action by any of said school districts which would violate the terms of the permanent injunction provided for in paragraph 4 of this order; (c) shall not provide any state funds to any of said school districts which has been found in violation of the terms of the permanent injunction provided for in paragraph 4 of this order; and (d) shall make appropriate inquiries whenever the State Department of Education receives information or complaints *1443 reflecting possible violation by any of said school districts of the terms of the permanent injunction provided for in paragraph 4 of this order.
8. ... Any individual school district that objects to any of the provisions of this Order must file notice of the objection with this Court within ten (10) days from the date of this Order, which shall become final and conclusive as to each school district which does not object within that time. If objections are filed, a hearing will be set on the objections at a subsequent date.
No objections were filed; said order thus became final and conclusive as to all the school districts within this court’s jurisdiction, and in particular as to the Grady, Hart, Irwin, Jasper, Macon, Mitchell, Monroe, Morgan and Peach County Boards of Education, each of whom became inactive defendants.
From January 1974 until March 1,1988— more than 14 years — no party suggested that this case as to either of these nine county boards of education should be reactivated. That period of tranquility ended on March 1, 1988, when the United States, in an apparent effort to rid itself of inactive case files, filed the first of a series of “motion[s] to have stipulation approved” by which the United States and each of these nine defendant boards of education — without conferring with plaintiff-intervenors— stipulated “to have this case dismissed since these parties agree that defendants have achieved and maintained a unitary status in all respects for several years, and that the judgment of this Court has been fully satisfied ...”
Plaintiff-intervenors on March 11, 1988, began serving interrogatories upon each of these nine boards of education seeking extensive information as to the operation of each defendant school system from the 1971-72 school year through the 1987-88 school year and seeking some information beginning with the 1963-64 school year and continuing to the current year, all designed to determine whether or not each defendant stipulating school board, in truth and fact, is now operating a unitary school systern. Plaintiff-intervenors further filed their responses to the motions of the United States and the defendant boards of education vigorously opposing the granting of said motions on account of the failure of movants to submit supporting factual affidavits and memorandum of authorities with their motions and because of their failure to demonstrate that these defendant school systems have achieved unitary status pursuant to Georgia State Conferences of Branches of NAACP v. State of Georgia, 775 F.2d 1403, 1413 (11th Cir.1985).
The plaintiff-intervenors’ interrogatories and opposition to the motions caused the United States to suggest a status conference which was held on May 18, 1988. At that conference the government explained that having received no complaints as to the operation of these school systems for a number of years, counsel determined it would be appropriate to dismiss them, contacted these school systems, reached agreements and filed the stipulations. The government suggested the conference was needed to focus on procedures to resolve the pending motions and discovery requests which the defendant school boards deem to be burdensome and possibly aimed at irrelevant matters. The government did not, however, oppose the interrogatories or dispute plaintiff-intervenors’ right to engage in discovery.
Plaintiff-intervenors suggested that some of the defendant schools have withdrawn their stipulations and asked the government’s position as to those defendants. In so doing, counsel advised “we had a meeting with the Department of Justice shortly after these motions were filed and told the Department that we did not object to dismissal of the cases, if the permanent injunctions were to remain in effect .. ” (Tr. p. 6). Counsel further stated that “we have specific benefits from existing court orders that we think are important to retain.” (Tr. p. 9).
The United States objected to dismissing as to these defendant school boards leaving the permanent injunctions in effect saying “... once the school system has complied fully [with this court order] and has *1444 achieved unitary status, it is entitled to a dismissal and ... there's no need for the injunction to remain in place ...” (Tr. p. 11 and 12). The government suggested shortening the period of time for which the school boards are subject to discovery so as to decrease the discovery burden and expense and otherwise refused to retreat from its motion for a determination of unitary status.
Counsel for the defendant school boards responded that the school boards desired to leave the injunction in effect and dismiss the civil action without a finding of unitary status.
The government insisted that there could be no dismissal absent a finding of unitary status and the court called “upon the government to file a brief as to why this court has a duty to make a finding as to unitary status as a condition precedent to dismissal, as contrasted with just dismissing and leaving the injunction in effect as it has been for all these years.” (Tr. p. 18). In the meantime, discovery was stayed.
In a lengthy brief filed April 29, 1988, the United States continued to insist “that the law and evidence will make it clear that dismissal is appropriate but [government counsel] certainly believe that plaintiff-intervenors are first entitled to the opportunity offered them by the law of this circuit to show cause why such dismissal is inappropriate.” (Brief p. 4). In conclusion, the government argued “[t]his case should proceed, and a discovery schedule should be set, with the aim that this court determine whether these school districts have attained unitary status ...” (Brief p. 15). In so arguing, no mention was made of the burden upon these small county boards of education of paying the resulting attorneys fees and expenses of this case proceeding as suggested.
Plaintiff-intervenors, in their response, assert that this court has the authority to dismiss these actions without vacating the existing general injunctions and should approve the agreement of the plaintiff-intervenors and defendant school systems to such a disposition.
The defendant school boards filed no further response, but in no way changed their stated positions that they desire a dismissal, leaving the existing injunction in effect.
Viewed overall, in spite of the agreement of plaintiff-intervenors and these inactive defendant school boards to dismiss this school desegregation civil action leaving the 1974 permanent injunction in effect and in spite of the fact that neither the plaintiff-intervenors nor any defendant school board desires this court to determine whether or not either of the defendant school systems has achieved unitary status, the United States as plaintiff-movant continues to insist that this court has the duty and responsibility of determining whether or not each defendant school system has achieved unitary status. The fact that the extensive discovery and evidentiary hearing required for such a determination will cause each of these small county school boards to collect taxes from their local property owners to pay necessary attorneys fees and litigation expenses, seems to be of no concern to the United States, but, of course, is the paramount concern of each of these school boards to whom this is an unnecessary exercise.
In spite of the United States’ position being totally inconsistent with the old adage “if it ain’t broke, don’t fix it,” in this court’s best judgment the United States, as plaintiff, has the right to move this court for a finding of unitary status as to each of these school systems, provided that as the moving party it assumes the entire burden of proving — factually and legally — that each school system is in a unitary status. The entire burden includes the responsibility of representing each school board without expense to the school board in all discovery, pretrial and trial matters, so long as each school board does not desire, at its own expense, to be represented by its own counsel. Any other approach would be inequitable to these innocent bystander school boards.
The United States, within sixty (60) days, shall advise the court and all parties whether or not it wishes to proceed in this fash *1445 ion. If it does not, this court will then, after hearing from the parties, determine whether it should again close the file, leaving this case in its pre-March 1, 1988, inactive status or, by agreement of the plaintiff-intervenors and defendants, dismiss it, leaving the existing permanent injunction in effect.